UNITED STATES *v.* BELL & HOWELL CO. (No. 3422) [1]

[1] T. D. 45263.

United States Court of Customs and Patent Appeals, November 2, 1931

*Charles D. Lawrence,* Assistant Attorney General (*John F. Kavanagh,* special attorney, of counsel), for the United States.

No appearance for appellee.

[Oral argument October 5, 1931, by Mr. Lawrence; submitted on record by appellee]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

Merchandise, described in the protest and on the invoice as "Kodacolor filter adapters for 1″ F/1.8 formula IVA lenses," and consisting of small brass rings, designed and adapted for holding photocolor filters—colored glass—in front of photographic lenses in the taking of colored pictures, was assessed for duty by the collector at the port of Chicago at 45 per centum ad valorem under paragraph 228 of the Tariff Act of 1922, which reads as follows:

PAR. 228. Azimuth mirrors, sextants, and octants; photographic and projection lenses, opera and field glasses, telescopes, microscopes, and other optical instruments, and frames and mountings for the same; all the foregoing not specially provided for, 45 per centum ad valorem.

It is claimed by the importer that the merchandise is properly dutiable as parts of photographic cameras at only 20 per centum ad valorem under paragraph 1453 of that act, the pertinent part of which reads as follows:

PAR. 1453. Photographic cameras and parts thereof, not specially provided for, 20 per centum ad valorem; * * *

On the trial below, George C. Ahlander, the only witness called by the importer, testified that the imported articles were "adapters for photocolor F/1.8 lenses"; and that they were used in the taking of colored pictures for the purpose of holding photocolor filters—colored glass—in front of the photographic lenses. In this connection, he said:

This slips over—Exhibit 1 slips over the front of the lens. This holds a diaphragm operating on the sleeve in a stationary position so that the diaphragm is at full opening at all times. Of course the photocolor filter is mounted on the front of that; I have a sketch of that.

He further said that the involved articles, represented by Exhibit 1, did not hold the lenses and that the lenses were not mounted on them. Illustrative Exhibit A was introduced by the importer for the purpose of indicating how the involved articles are used. We quote from this exhibit:

In making of movies in color, a speed lens is a rigid requirement. In addition, certain filters must be used to accomplish the distribution of color. *The Taylor-Hobson Cooke "Special" F 1.8 lens when equipped with Kodacolor filters is made specially for taking Kodacolor movies.* The F 1.8 with Kodacolor filters, is shown at the left, above. When used for black and white pictures, it appears as it is shown at the left in the group below. The other two units are the Kodacolor filters. (Italics ours.)

The evidence offered by the Government has no bearing whatsoever on the issues in the case and may be ignored in the disposition thereof.

The court below held that the merchandise was dutiable as parts of cameras and, accordingly, sustained the protest.

It is contended by counsel for the Government that the involved articles are *eo nomine* provided for as "frames and mountings" for projection lenses in paragraph 228 and that they are not parts of cameras. The case of the *American Holding Corp. et al.* v. *United States,* 18 C. C. P. A. (Customs) 275, T. D. 44449, is cited in support of the Government's contention.

No brief has been filed in this court by counsel for appellee.

This court has repeatedly held that the word "mountings," contained in paragraphs 93 and 94 of the Tariff Act of 1913, and in paragraph 228 of the Tariff Act of 1922, was intended by the Congress to include accessories, adjuncts, or parts of the instruments or articles provided for in those paragraphs. *United States* v. *American Express Co.,* 7 Ct. Cust. Appls. 169, T. D. 36490; *United States* v. *Sheldon & Co.,* 9 Ct. Cust. Appls. 153, T. D. 37994; *United States* v. *International*

*Forwarding Co.*, 9 Ct. Cust. Appls. 156, T. D. 37995; *Lietz Co.* v. *United States*, 11 Ct. Cust. Appls. 426, T. D. 39434; *Thomas Co.* v. *United States*, 12 Ct. Cust. Appls. 425, T. D. 40591; *American Holding Corp. et al.* v. *United States, supra.*

In the case of *United States* v. *American Express Co., supra,* this court, after holding that the term "frames and mountings" in paragraph 94 of the Tariff Act of 1913 should not be construed so as to be limited to the particular article or structure on which a projection lens was mounted, but should be extended to include certain adjuncts and accessories designed to aid and assist the projection lens in the performance of its proper functions, said:

> In our opinion, the evidence in this case very clearly establishes that the metal support, the reels, the electric lamp, the mirror, the condenser, and the motive machinery are all instrumentalities designed to aid and assist the projection lens in producing on a screen an enlargement of the small pictures on the film, and that without such appliances the projection lens would be wholly ineffective for that purpose. Unquestionably the completed article would be a moving-picture machine and possibly it might be regarded as an optical instrument. Nevertheless, it would be at the same time a projection lens supported by the frame and fitted with the adjuncts which make it available for use.

The decision in the above case was approved in each of the cited cases decided subsequently thereto. It may be well to state, however, that in none of those cases decided under the Tariff Act of 1913 were the provisions for "photographic cameras, and parts thereof, not specially provided for in this section," contained in paragraph 380 of that act, in issue, nor were they called to the attention of the court. Furthermore, the provisions for "photographic cameras and parts thereof, not specially provided for," contained in paragraph 1453, were not in issue, nor were they called to the court's attention in either of the cited cases decided under the act of 1922.

It may be argued that the phrase "frames and mountings," contained in paragraph 228, ought not to be given one meaning when applied to photographic lenses and another when used in connection with the other instruments and articles provided for therein. Nevertheless, so that the intention of the Congress may be ascertained and made effective, it is the duty of the courts, where possible, to so construe a tariff act as to give effect to all its parts, although it may be necessary, in order to do so, to enlarge or restrict the ordinary meaning of a tariff term. *Sonneborn Sons* v. *United States*, 1 Ct. Cust. Appls. 443, T. D. 31504; *United States* v. *Stone & Downer Co. et al.*, 274 U. S. 225; *Beaver Products Co. (Inc.)* v. *United States*, 17 C. C. P. A. (Customs) 434, T. D. 43878.

It is evident that if the definition of the terms "frames" and "mountings," contained in paragraph 228, be extended to include all of the supporting structure and parts thereof and all of the instrumentalities designed in a general way to aid the photographic lens

in the performance of its proper functions, in accordance with the decision of this court in the case of *United States* v. *American Express Co.*, *supra*, construing the phrase "frames and mountings" for projection lenses, contained in paragraph 94 of the Tariff Act of 1913, there would be little, if anything, left to be classified under the provisions for photographic cameras and parts thereof, provided for in paragraph 1453.

Obviously, if the Congress had intended that the provision for "frames and mountings" for "photographic lenses" should cover all, or substantially all, of the structure and parts of photographic cameras it would not have provided in paragraph 1453 for "photographic cameras and parts thereof, not specially provided for."

The word "mounting" is defined in Webster's New International Dictionary (1916), and in the Oxford Dictionary (1908), respectively, as follows:

Mounting.—* * * 2. That which serves as a mount or by which anything is prepared or equipped for use, or set off to advantage; equipment; embellishment; setting, as the mounting, or nonoptical parts (pier axes, circles, tubes, etc.), of a telescope, sword, diamond, gun, or picture.

Mounting.—* * * 2. Something that serves as a mount, support, or setting to anything. * * * 1793. W. & S. Jones Catal. Optical, etc., Instr. 1. Reading and burning glasses, in various mountings.

It is evident from these definitions that the term "mountings" may mean, depending on the intention of the Congress, that which serves as a mount or a support for an article; or it may include accessories, adjuncts, and equipment by means of which an article is prepared or equipped for use, or set off to an advantage.

In the cases hereinbefore cited this court adopted the enlarged meaning and applied it to the articles and instruments considered in those cases. However, this meaning has never been applied, so far as we are aware, to the provisions for "mountings" for "photographic lenses." Furthermore, we are of opinion that it was not the intention of the Congress to use the word "mountings" in connection with "photographic lenses" in its broad and comprehensive meaning. On the contrary, we think the Congress intended that, as applied to "photographic lenses," the phrase "frames and mountings" should be given a restricted meaning and should be limited to the frames in which, and to the parts on which, such lenses are intended to be mounted or supported. Any other construction would result either in so greatly limiting the operation of the provisions for photographic cameras and parts thereof, in paragraph 1453, as to defeat the evident purpose of the Congress, or in placing such a doubtful and indefinite limitation on the provisions for "frames and mountings" for photographic lenses as to make it difficult, if not impossible, for importers and customs officials, and the courts for that matter, to comprehend the scope of them.

The clear and uncontroverted evidence in this case is that the articles in question are "Kodacolor filter adapters for 1 "F/1.8 formula IVA lenses," designed and used as equipment and accessories for, or adjuncts of, photographic lenses, and are, when in use, so connected that they directly contribute to, and aid, photographic lenses in the performance of their proper functions. However, they do not serve as mounts, supports, nor as frames for the lenses, but are merely connected to them. They are not, therefore, within the restricted meaning intended by the Congress to be applied to the phrase "frames and mountings" when used in connection with "photographic lenses."

In our opinion the involved articles are parts of photographic cameras and dutiable as such under paragraph 1453, and we so hold.

The judgment is *affirmed.*