UNITED STATES *v.* CLAY ADAMS CO., INC. (No. 3555)[1]

United States Court of Customs and Patent Appeals, December 5, 1932

*Charles D. Lawrence*, Assistant Attorney General (*Hugo P. Geisler* and *Ralph Folks*, special attorneys, of counsel), for the United States.
*Curie, Lane & Wallace* (*Samuel Isenschmid* of counsel) for appellee.

· [Oral argument October 4, 1932, by Mr. Folks and Mr. Isenschmid]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Two cases of imported merchandise, invoiced, respectively, as "Projektionsappaarate" and "Projektionsapparate," were described by the appraiser as follows:

> The merchandise is described on the invoice as projektions apparatus and consists of projection apparatuses. It was returned for duty at 45% ad val. under the provision for such merchandise in par. 228 (b), act of 1930.

The merchandise was assessed for duty at 45 per centum ad valorem under paragraph 228 (b) of the Tariff Act of 1930. The importer protested such classification, and the chief claim made as to the dutiable status of such merchandise, which claim is here relied on, was that the merchandise was described in and dutiable under paragraph 360 of said act. Alternate claims were also made for assessment under para-

---

[1] T. D. 46078.

graph 353 as an article having as an essential feature an electrical element or device, and claim was also made that it was a machine not specially provided for under paragraph 372. In view of our conclusion it is not necessary for us to consider the two last-mentioned claims.

The United States Customs Court sustained the importer's protest, holding that the merchandise was dutiable as "Scientific and laboratory instruments, apparatus [etc.]," under said paragraph 360, and from the judgment of the court below the United States has appealed here.

The material portions of the two competing paragraphs are as follows:

PAR. 228. (b) * * * photographic or projection lenses, * * * microscopes, all optical instruments, frames and mountings therefor, and parts of any of the foregoing; all the foregoing, finished or unfinished, not specially provided for, 45 per centum ad valorem.

PAR. 360. Scientific and laboratory instruments, apparatus, utensils, appliances (including surveying and mathematical instruments), and parts thereof, wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, not specially provided for, 40 per centum ad valorem; * * *.

The importation consists of the combination of a microscope and a projecting apparatus which is called "Promi" and styled by its sellers as a "Microscopic drawing and projection apparatus." It embodies the principle of the microscope, which magnifies the specimen, and a projecting apparatus which, through the use of a lens and a light, projects the magnified image of the specimen downward on a sheet of paper where the reflected image is shown in a picture or reflection about seven inches in diameter, or upon a screen on the wall where the image is three or four feet in diameter. The evidence shows that the devices are used in biological laboratories, in institutions of learning, in pathological laboratories, in hospitals, and in laboratories of industrial concerns such as paper mills, where the examination of microscopic specimens is desired.

The importer contends that paragraph 228 (b) does not provide for any kind of "apparatus"; that the merchandise is not a "projection lens" and is not a microscope for the reason that it is more than either. It concedes that the importation embodies a composite of the principles both of magnification and projection. It further contends that the merchandise can not consist of frames and mountings for either a projection lens or a microscope, inasmuch as "frames and mountings therefor" has reference only to "all optical instruments" and does not refer back to "projection lenses and mountings"; that the change in the language of the two paragraphs, 228 (b) of the Tariff Act of 1930 and 228 of the Tariff Act of 1922, indicates a change in meaning and that such change denotes that Congress did not intend that the phrase "frames and mountings therefor" in the Tariff Act of 1930 should refer back to projection lenses and microscopes.

The importer's chief contention is that the merchandise is not dutiable under the general provision for "all optical instruments" in said paragraph since it is more specifically provided for elsewhere; that it is specifically provided for as "Scientific and laboratory instruments, apparatus, utensils, appliances [etc.]," in paragraph 360, which, it contends, is a *use* provision and, therefore, more specific than "all optical instruments [etc.]."

The Government contends that the importation is a projection lens and "frames and mountings therefor, and parts" thereof; that there is no change in language in paragraph 228 (b) of the Tariff Act of 1930 which warrants the conclusion that "frames and mountings therefor" does not refer to projection lenses and microscopes as in the former act. It urges, upon this premise, that the question is *stare decisis;* that under certain decisions of this court the importation consists of "projection lenses" and "frames and mountings therefor or parts thereof," citing *American Holding Corp. et al.* v. *United States,* 18 C. C. P. A. (Customs) 275, T. D. 44449; *United States* v. *American Express Co.,* 7 Ct. Cust. Appls. 169, T. D. 36490. It further calls attention to the "Summary of Tariff Information, 1929," and to the hearings before committees of Congress to which reference will be made hereinafter. The Government further contends that in our decision in *W. L. Conover* v. *United States,* 17 C. C. P. A. (Customs) 324, T. D. 43743, the court construed paragraph 360 of the Tariff Act of 1922 (which is, as far as the merchandise herein involved is concerned, substantially the same as paragraph 360 of the Tariff Act of 1930) and held that said paragraph (except as otherwise specially provided therein) applied only to articles used in pure science and not to articles used in applied science. The Government urges that the record shows a use of the instant importation in applied science, relying upon dictionary definitions and this court's holding in the *Conover* case, *supra.*

Since the Government contends for a classification under that portion of paragraph 228 (b) for lenses and frames and mountings therefor, and not under the provision for all optical instruments, it has not answered appellee's contention as to the relative specificity of the two provisions discussed by appellee.

In our view we are not required to pass upon many of the different questions presented by both sides in this case. We think the context of the competing paragraphs and predecessor paragraphs in previous tariff acts points to an intent of Congress that this importation should find dutiable classification in paragraph 228 (b), and it is not necessary for us to hold definitely what Congress may have meant by its change of language. We do not think it meant to exclude from paragraph 228 such merchandise as is herein involved.

In *United States* v. *Massce & Co.*, 20 C. C. P. A. (Customs) 210, T. D. 45993, we held that the term "frames and mountings therefor" in said paragraph 228 (b) related back to "projection lenses." We are not impressed with the contention of the Government that the importation at bar consists of a projection lens and frames and mountings therefor. The importation embraces a projection lens and a microscope and something else in the nature of projection apparatus. It may include what might be termed, under some circumstances, frames and mountings, but it would be difficult to determine to what the frames and mountings belong—certainly not frames and mountings for a microscope, because the term "microscope" embraces the whole of that portion of the optical instrument devoted to the principle of magnification. We hardly think either of the terms "projection lenses * * * frames and mountings therefor," or "projection lenses * * * microscopes * * * frames and mountings therefor," aptly describes the merchandise at bar, but we do hold that the provision for "all optical instruments, frames and mountings therefor," clearly embraces the importation at bar.

If it were conceded that the importation is a scientific apparatus within the meaning of paragraph 360 and if it were also conceded that the provision in paragraph 360 as applied to the merchandise involved is more specific than the provision for "all optical instruments, frames and mountings therefor," in paragraph 228 (b), we nevertheless would conclude that the particular merchandise at bar should be held dutiable under the latter provision. If we were called upon to pass on the question of the relative specificity of the two competing provisions, we, no doubt, would be confronted with considerable difficulty. It seems obvious, however, that the degree of difference in specificity between the two provisions, if any exists, is not great, certainly not great enough to be controlling under the circumstances with which we are confronted.

The rule of relative specificity is a rule of construction employed by the courts in trying to arrive at legislative intent. Like most rules of construction it is frequently found in conflict with other rules of construction and at times must yield in controlling influence. *Downing & Co.* v. *United States*, 6 Ct. Cust. Appls. 447, T. D. 35984. All rules of construction must yield if the legislative intent is shown to be counter to the apparent intent indicated by such rule. The master rule in the construction of statutes is to so interpret them as to carry out the legislative intent. *L. R. Markell et al.* v. *United States*, 16 Ct. Cust. Appls. 518, T. D. 43239; *United States* v. *Stone & Downer Co. et al.*, 16 Ct. Cust. Appls. 82, T. D. 42732; *Cassard Romano Co., David A. Haagens* v. *United States*, 19 C. C. P. A. (Customs) 191, T. D. 45294;

*Procter & Gamble Mfg. Co.* v. *United States*, 19 C. C. P. A. (Customs) 415, T. D. 45578.

We are not unmindful of the importance in customs jurisprudence that has attached to the well-settled rule relative to relative specificity. Throughout the entire history of customs litigation it has been a potent instrument used with great frequency by the courts in determining the legislative intent. The fact that it has so seldom been forced to yield its controlling effect emphasizes the weight which the courts have given to it, but like all of the rules of construction it has its limitations.

The controlling effect of rules of construction was thoroughly discussed in *L. R. Markell et al.* v. *United States, supra,* where the rule relating to grammatical construction, based upon punctuation, had to give way to the master rule. The court there said:

The intention of the legislature, as indicated by the applicability of a rule of construction, must yield if the contrary intent is otherwise ascertained. *Stoeger* v. *United States,* 16 Ct. Cust. Appls. 291, T. D. 42472; *United States* v. *Stone & Downer Co. et al.,* 16 Ct. Cust. Appls. 82, T. D. 42732.

See the very recent case of *United States* v. *Shreveport Grain & Elevator Co.,* 287 U. S. 77, decided November 7, 1932.

In *United States* v. *Stone & Downer Co. et al., supra* (the asbestos shingle case), the rule with reference to the acceptance of commercial meaning of a term was not given controlling effect where it was found that the term was used in its common sense.

In *Cassard Romano Co., David A. Haagens* v. *United States, supra,* referring to the rule that a change in language implies a change in intent, the court said:

The rule is equally well settled that the intention of Congress, as indicated by the applicability of a rule of construction, must yield if the contrary intent is otherwise ascertained. *Markell et al.* v. *United States,* 16 Ct. Cust. Appls. 518, T. D. 43239.

To the same effect are *United States* v. *American Trading Co. et al.,* 17 C. C. P. A. (Customs) 368, T. D. 43810; *Lehn & Fink (Inc.)* v. *United States,* 12 Ct. Cust. Appls. 359, T. D. 40519; and many other cases which here could be cited.

In *Downing & Co.* v. *United States, supra,* it was held that "relative specificity of competing provisions of the tariff law is not always controlling of decision." (Quotation from syllabus.)

We think the context of paragraph 228 (b) and a consideration of the character of the articles Congress specifically provided for therein compels the conclusion that the legislature contemplated the classification thereunder of merchandise such as is at bar. This being clear to us, hair-splitting considerations involved in determining the degree of specificity of the two provisions is unimportant. The paragraph

provides for projection lenses and for microscopes, and the catchall provision covers "all optical instruments." It being conceded that the importation is an optical instrument, is there any plausible reason to conclude that Congress intended to have a different rate of duty apply to a combination of a projection lens and a microscope than that which it made applicable to the units of the combination when imported by themselves? No reason has been assigned, and we know of no plausible reason which can be assigned which would account for Congress intending such an anomalous result. Anomalies of this kind must be avoided if the language permits. The language not only permits the avoidance of such an anomalous result but we think compels it. See *United States* v. *Stone & Downer Co.*, 274 U. S. 225.

In its brief and in oral argument the Government has argued at length that the legislative history points to the conclusion that Congress intended this merchandise to be dutiable under paragraph 228 (b). It has referred to "Summary of Tariff Information, 1929, volume 1," at page 552, where certain representations were made by the Tariff Commission, and to "Hearings before the Committee on Finance, Tariff Act of 1929," volumes 1 and 2, pages 576 to 600, on the subject of optical instruments. While it is apparent that these facts do not show a congressional intent contrary to the conclusions herein reached, they are of such character as to be of little if any help in bringing us to such a conclusion.

For the reasons heretofore assigned we hold that the importation is dutiable under paragraph 228 (b) of the Tariff Act of 1930, and the judgment of the United States Customs Court is *reversed*.

GARRETT, Judge, dissents.

### SPECIAL CONCURRING OPINION

HATFIELD, Judge: I am unable to concur in that portion of the majority opinion wherein it is said that, even if the involved articles were more specifically provided for under paragraph 360 as scientific and laboratory instruments, etc., the court would, nevertheless, hold them dutiable under the provision for all optical instruments, contained in paragraph 228 (b).

Tariff acts present many anomalies, and to the uninitiated it might seem that the fact that one commodity may be and frequently is covered by several tariff provisions at different rates of duty is one of them. Such, however, is not the case. Tariff legislation relates to thousands of commodities, and, although tariff acts are considered with great care by the Congress, it is often impossible to prevent the provisions of one paragraph from reaching out and invading the apparent domain of another. Furthermore, the Congress frequently expressly provides for such an invasion. Due to these facts the doctrine of relative specificity has been uniformly applied by the courts

in the construction and application of tariff provisions. So important is the doctrine that, in the Tariff Act of 1930 and in previous tariff acts, the Congress has given it legislative recognition. Accordingly, if pertinent, such doctrine should be given application in all cases unless the will of the Congress may be more accurately determined by some other rule or rules of statutory construction, and in no case where pertinent should it be lightly regarded.

In the case at bar the doctrine is not only pertinent but, in my opinion, its application is essential for the purpose of determining the intent of the Congress.

The involved articles are undoubtedly optical instruments and are dutiable as such under the provisions of paragraph 228 (b), unless they are more specifically provided for as scientific and laboratory instruments, etc., under paragraph 360.

An optical instrument is one which relates to the science of optics. See Webster's New International Dictionary. It is "primarily used to aid or supplement human vision." Summary of Tariff Information, 1929, page 552.

Whether the provisions for scientific and laboratory instruments, etc., contained in paragraph 360, be given limited or extended application, they, nevertheless, cover a variety of articles used for numerous scientific purposes, whereas the provision for "all optical instruments" is limited to such scientific instruments as relate to and are used only in the science of optics.

In view of this situation it seems obvious to me that the provision for all optical instruments contained in paragraph 228 (b) is a more specific designation for such instruments than the provisions for scientific and laboratory instruments, etc., contained in paragraph 360.

Accordingly, applying the doctrine of relative specificity, it is evident that the purpose of the Congress was to provide for the involved articles at 45 per centum ad valorem under paragraph 228 (b).